## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

GREGORY MICHAEL HERNANDEZ,   )
                                   )
      Petitioner,             )
                                   )
v.                               )      Case No. CIV-11-1356-R
                                 )
DAVID PARKER, Warden,      )
                                 )
      Respondent.         )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Petition, Doc. No. 1), along with a supporting brief, (Supporting Brief, Doc. No. 2), challenging his conviction after a jury trial in the District Court of Cleveland County, Case No. CF-2007-1037. He was convicted on three counts of rape by instrumentation of a victim under age fourteen, one count of second degree rape of a victim under age sixteen, one count of first degree rape of a victim under age fourteen, and two counts of engaging in a pattern of criminal offenses. The victims were Petitioner's step-daughters, A.H. and R.H.

Petitioner was sentenced to twenty years on each of the three rape by instrumentation counts, fifteen years on the count of second degree rape of a victim under age sixteen, and life imprisonment on the count of first degree rape of a victim under age fourteen, all to be served consecutively. He received a sentence of two years on each of the pattern of criminal offenses counts to run concurrently with each other but consecutively to the rape counts. The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Petitioner's conviction by

summary opinion. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Petitioner seeks habeas corpus relief on eight grounds: 1) improper exclusion of evidence of prior false allegations and unreasonable restriction of cross-examination; 2) insufficient evidence to support the convictions; 3) improper exclusion of evidence that the prosecutrixes' mother put her daughters up to lying about their claims; 4) improper admission of opinion testimony; 5) improper admission of evidence of other crimes and bad character; 6) prosecutorial misconduct; 7) excessive sentence; and 8) cumulative error.

Respondent has filed a response to the petition (Response, Doc. No. 14) along with the relevant state court preliminary hearing transcript (P. H. Tr.), motion hearing transcripts (Mt. H. Tr.), trial transcript (T. Tr.), and the Original Record (O.R.). Petitioner has filed a reply (Reply, Doc. No. 17), and the matter is at issue. For the following reasons, it is recommended that the petition be denied.

## Standard Governing Habeas Review

When the OCCA denies a habeas claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard for this court's review. "[The AEDPA] reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. __,__, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5(1979)). Habeas relief may be granted only if the OCCA's

adjudication of the merits of a federal claim has resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).

A decision is "contrary to" clearly established federal law for purposes of § 2254 "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[T]he AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006) (emphasis in original)). Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted).

The AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence."

3

28 U.S.C. § 2254(e)(1).

## Analysis

### Ground One - Prior False Allegations and Restricting Cross-Examination

Both before this court and the OCCA, Petitioner has generally maintained "[t]he trial court erred in excluding evidence of prior false allegations and unreasonably restricting cross-examination, thereby crippling the defense and depriving [Petitioner] of his fundamental right to confrontation under the Sixth and Fourteenth Amendments to the United State's Constitution and Oklahoma's corollary provisions."[1] Supporting Brief, p. 10; Response, Exhibit 1, p. 11.

Specifically, Petitioner asserts the trial court improperly excluded evidence that A.H., the older of the two victims, had previously accused three juvenile males of sexual impropriety. The charges were filed in Tulsa County District Court and later dropped. Petitioner maintains "[t]he trial court improperly ruled that specific instances of conduct – such as these alleged prior false allegations – could not be used to impeach [A.H.]." Supporting Brief, p. 10. He argues that "the prohibition against extrinsic evidence of specific instances of conduct in Section 2608 (B) is inapplicable to impeachment evidence which tends to show a witness' motive or bias." *Id.* Petitioner likewise contends that evidence that A.H. had previously alleged that a family friend, Chris Pulsifer, engaged in improper sexual conduct with her should have been admissible to show her bias or prejudice. *Id.* at 10-11.

---

[1]Unless otherwise indicated, quotations in this report are reproduced verbatim.

In addition, Petitioner maintains he should have been permitted to cross-examine A.H. with regard to the prior allegations. *Id.* at 10 and 15. Finally, Petitioner claims the trial court unduly limited his counsel's efforts on cross-examination to impeach R.H., the younger victim, with her preliminary hearing testimony. *Id.* at 14-15.

In addressing these issues on direct appeal, the OCCA determined that

[t]he trial court did not abuse its discretion by excluding testimony of other persons who would claim that A.H. made false allegations of sexual misconduct against them. *See* 12 O.S.Supp.2002, § 2608(B)(prohibiting extrinsic evidence of specific instances of conduct for purpose of attacking witness's credibility). Furthermore, to the extent that Hernandez argues that he should have been able to present this testimony as evidence of A.H.'s bias, the testimony of the allegedly wrongly accused individuals was not relevant to showing how A.H. may have been biased against Hernandez, nor was it relevant to showing what motive she might have had to lie about his sexual abuse. Additionally, the trial court did not abuse its discretion by not allowing Hernandez to cross-examine A.H. about the alleged accusations. We agree with the trial court that in the absence of any offer of proof of the falsity of the accusations, with only the assertions of counsel that the accusations were false, there was nothing about the allegations that were probative of A.H.'s character for truthfulness. *See Woods v. State*, 1983 OK CR 4, ¶ 8, 657 P.2d 180, 182, *overruled in part on other grounds by Beck v. State*, 1991 OK CR 126, ¶ 12, 824 P.2d 385, 388-89 (holding that evidence of witness's false accusations against others is admissible in sex crimes case as probative of witness's truthfulness, but if defendant "cannot offer to the court facts in reasonable support of the falsity of the prior accusations, then they have no probative value for impeachment purposes and should not be allowed as a subject on cross-examination").

Moreover, the trial court judge did not abuse his discretion by restricting Hernandez's cross-examination of victim-witness R.H. and thereby violate Hernandez's confrontation rights under the United States and Oklahoma constitutions. The record shows that defense counsel's line of questions about R.H.'s preliminary hearing testimony was obviously confusing the child-witness and possibly confusing the jury. Contrary to Hernandez's assertion, the trial judge did not "shut down" defense counsel's

cross-examination. The transcript shows that the judge intervened and guided defense counsel in reformulating his questions in a way that neither misstated R.H.'s preliminary hearing testimony nor confused the jury or the young witness. While the Sixth Amendment guarantees a defendant the right to cross-examine witnesses, a trial judge may place reasonable limits on the cross-examination in order to prevent "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Thrasher v. State*, 2006 OK CR 15, ¶ 7, 134 P.3d 846, 849.

Response, Exhibit 3, Summary Opinion, pp. 2-4.

A review of the record reveals counsel for Petitioner sought by pre-trial motion to offer evidence that A.H., the older of the two victims, had previously made false allegations of sexual misconduct against three juveniles and Chris Pulsifer. O.R. 134-38. At a pre-trial hearing, defense counsel advised the trial court that charges against the three juveniles in Tulsa County District Court were dismissed due to A.H.'s failure "to cooperate or to show or to be willing to speak on that at trial [and] it's directly relevant on her credibility[.]" Sept. 19, 2008 Mt. H. 15. As to Chris Pulsifer, counsel stated that the "matter did not go to a criminal case but was an allegation made by [A.H.] that Mr. Pulsifer will testify to was completely and utterly false[.]" *Id.* at 15-16. The prosecutor, on the other hand, advised the court that the criminal charges against the juveniles had been "dismissed because the victim's family, the defendant in this case, was uncooperative." *Id.* at 17.

The trial court determined that in the absence of evidence that A.H. had admitted that the allegations were false, the question of whether the allegations were, in fact, false was an issue the jury ought not to be "burdened with" and "would most likely be confusing to the jury[.]" *Id.* at 19. The trial court further found A.H. could not be questioned on this issue

because if she were asked if she had made these prior allegations of sexual misconduct "and she says yes and nothing further is permitted, . . . [t]he jury is going to wonder whether or not they were convicted, in which case it would be prejudicial against the defendant, or why they weren't convicted, which may be prejudicial against the state." *Id.* at 21. Additionally, the court explained:

> Let's say that you offered evidence that they were false and she says, no, they were true, then we've got a red herring in here. We've got issues in here that don't belong in this case because it's just another question that the jury has got to sort out. We've got to try another case is what I'm saying.

*Id.* at 22.

At trial, an offer of proof was made by Petitioner with regard to the proposed testimony of Chris Pulsifer and of Leroy Wells, one of the juveniles. T. Tr. 413. Defense counsel submitted that "Leroy Wells would speak to the issue that [A.H.] had a boyfriend/girlfriend interest in one of the accused young men; that they were not paying her the attention that she wished; that all of her allegations were completely and utterly false, they had no base in fact whatsoever." *Id.* If Chris Pulsifer were permitted to testify, counsel proffered that he "would speak to the issue that [A.H.] falsified information relative to him, saying that he had spoken to her in a sexual manner. That was completely and utterly untrue." *Id.* Counsel's final offer of proof was as to "an additional witness that overheard not only that conversation but also overheard [A.H.] telling [her mother] her representations as to what took place and that . . . what [A.H.] represented was not even close to being accurate." *Id.* The trial judge stood on his previous order prohibiting the proffered

7

testimony, finding that "whether or not these accusations are true or false are not an issue in this case . . . and I don't think they're relevant." *Id.* at 413-414. He further concluded, "I don't think they have any probative value. It's kind of a "he said/she said thing. But even if they were probative, the potential prejudice would far outweigh . . . any probative value they had." *Id.*

With respect to Petitioner's claim that the trial court hindered his right to cross-examine victim-witness R.H., the younger of the two victims, by impeaching her with her testimony at preliminary hearing, a review of the record reveals that defense counsel asked R.H. to confirm his understanding that Petitioner would "thrust" his finger in and out of her and that by "thrust" he meant that some measure of force was used. Tr. T. 247. When R.H. stated that she did not know, *id.,* defense counsel asked her to review her testimony at the preliminary hearing, P. H. Tr. 55, where she affirmatively responded when defense counsel inquired, "But during this whole situation when he was using his finger, all he would do was, as I understand it, thrust his finger in and out of your private area and that was it?" *Id.* The trial court sustained the State's objection to the question on the grounds that it was counsel who had used the word "thrust" at preliminary hearing without explaining the meaning of the word as he had just done at trial. *Id.* at 248. After argument, the trial court allowed defense counsel to ask R.H. if she knew the meaning of the word "thrust" when she testified at the preliminary hearing and when she stated she did not, the trial court, once again, sustained the objection. *Id.* at 248-250.

8

The record further reflects that during defense counsel's attempt to impeach R.H. with her preliminary hearing testimony, the trial court instructed counsel to rephrase a question after R.H. stated that she "was confused" at the preliminary hearing. *Id.* at 256-257. Counsel was then permitted to ask R.H. to review her preliminary hearing testimony, to identify the source of her confusion, and to then establish a conflict between her testimony at trial and at the preliminary hearing. *Id.* at 257-262. At a later point, counsel was once again instructed to rephrase a question to make it clear, and that portion of the questioning continued without any interruption. *Id.* at 265-266. Counsel was instructed not to testify. *Id.* at 268. The trial court then instructed the witness that it was okay to say that she did not know the answer to a question, but that if she did know, she was required to answer. *Id.* An objection to counsel testifying was later sustained. *Id.* at 274. Finally, the trial court sustained an objection to counsel's question to R.H. about whether her mother and Petitioner were "fighting about your mother's suspicions that [Petitioner] was cheating on her." *Id.* at 276. The trial court based its ruling on a finding that the issue had nothing to do with the present case. *Id.* at 276-277.

With this background, the undersigned turns now to Petitioner's allegations in support of his claim that he was denied his Sixth and Fourteenth Amendment rights to confrontation. Petitioner first claims such rights were violated by the trial court's refusal to permit the testimony of four individuals regarding allegedly false prior allegations of sexual conduct made by A.H. Supporting Brief, pp. 10-14. This same claim was asserted on direct appeal

to the OCCA. Response, Exhibit 1, p. 11. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85.

In this regard, the Oklahoma Evidence Code – as the OCCA found – and the Federal Rules of Evidence both prohibit the use of extrinsic evidence to impeach a witness with specific instances of conduct to attack the credibility of the witness. *See* Okla. Stat. tit. 12, § 2608(B); Fed.R.Evid. 608; *Beck v. State,* 824 P.2d 385, 388 (Okla.Crim.App. 1991). Nonetheless, such evidence is admissible in Oklahoma for other purposes, including the impeachment of a witness for bias. *Beck,* 824 P.2d at 388 ("Recognizing that the principles surrounding the introduction of bias evidence derive from the right of confrontation found in the United States Constitution amendment VI, and the Oklahoma Constitution art. II, § 20, this court has construed this right liberally."). The OCCA found, however, that the excluded testimony was not relevant to showing how A.H. may have been biased against her stepfather or to showing any motivation she might have to lie about his sexual abuse of her. Accordingly, the OCCA found no error had been committed by the trial court.

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense. . . . This right is a fundamental element of the due process of law." *Washington v. Texas,* 388 U.S. 14, 19 (1967). In seeking habeas relief, Petitioner cites to the Supreme Court's decision in *Chambers v.*

*Mississippi,* 410 U.S. 284 (1973), for the proposition that a state's hearsay rules cannot be applied mechanistically to prevent him from calling witnesses who would have offered reliable exculpatory evidence. Supporting Brief, p. 11. In *Chambers,* the Court reiterated that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers,* 410 U.S. at 302. Nonetheless, as was determined by the other Supreme Court decision on which Petitioner relies, "the Constitution leaves to the judges who must make these decisions [on the admissibility of evidence] 'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues." *Crane v. Kentucky,* 476 U.S. 683, 689-90 (1986) (quoting *Delaware v. Van Arsdell,* 475 U.S. 673, 679 (1986)).

Petitioner has failed to demonstrate that the OCCA contradicted or unreasonably applied Supreme Court precedent. While it is clearly established that a state's evidentiary rules cannot be applied mechanistically to prevent a defendant from presenting evidence in his own defense, it is also clear that a court may exclude evidence that is not relevant.[2]

With regard to the trial court's prohibition of cross-examination of A.H. about the

---

[2]The OCCA determined that the testimony of other individuals who would claim that A.H. made false allegations of sexual misconduct against them is not relevant to establishing any motivation A.H. may have had to lie about Petitioner's sexual abuse or to show how she might have been biased against him. It is noted that this relevancy analysis is consistent with that in *United States v. Abel,* 469 U.S. 45, 52 (1984), where the Court describes bias as "a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *See Beck v. State,* 824 P.2d 385, 389 (Okla.Cr.App. 1991).

alleged allegations, the OCCA relied on its decision in *Woods v. State* in determining that the

trial court had not abused its discretion.  *Woods v. State,* 657 P.2d 180 (Okla.Crim.App.

1983).  In *Woods,* the OCCA acknowledged the purpose of the constitutionally protected

right of cross-examination as explained by the Supreme Court in *Davis v. Alaska,* 415 U.S.

308 (1974), and concluded that "[t]he exposure of a witness's motivation in testifying is a

proper and important function" of that right.  *Woods,* 657 P.2d at 181.  In determining the

right of effective cross-examination had been denied and in establishing the parameters of

constitutionally protected inquiry, the *Woods* court found that

> with respect to the use of prior accusations made by the prosecutrix of a
> similar nature to the offense charged, the defense counsel should show to the
> trial court, in camera, that he has a sufficient quantum of proof providing a
> reasonable basis for the proposed line of interrogation.  At that time the State
> should be afforded the opportunity to show that the prior accusations are true.
> If the defense cannot offer to the court facts in reasonable support of the falsity
> of prior accusations, then they have no probative value for impeachment
> purposes and should not be allowed as a subject on cross-examination.  This
> is to protect the complaining witness against the defense's raising of unfair
> innuendos as well as to insure relevancy.

*Id.* at 182.

Here, applying the *Woods* standard, the OCCA "agree[d] with the trial court that in

the absence of any offer of proof of the falsity of the accusations, with only the assertions of

counsel that the accusations were false, there was nothing about the allegations that were

probative of A.H.'s character for truthfulness."  Response, Exhibit 3, p. 3.

The Confrontation Clause of the Sixth Amendment "guarantees the right of an

accused in a criminal prosecution to be confronted with the witnesses against him." *Davis,*

12

415 U.S. at 315. The OCCA did not find a violation of this right because, in the absence of evidence that the alleged prior allegations by A.H. were false, they were not probative for the purposes of impeachment and were not a proper subject for cross-examination. In his request for habeas relief, Petitioner conflates his arguments regarding his right to cross-examine A.H. about her purported prior false allegations with his argument concerning his counsel's cross-examination of R.H. Supporting Brief, pp. 14-15. Thus, the undersigned has addressed the OCCA's findings with regard to the cross-examination of R.H. before examining the federal case law on which Petitioner relies.

In determining that Petitioner's constitutional right to confrontation was not violated by the trial court's restriction of Petitioner's cross-examination of victim-witness R.H., the OCCA recognized that while the Sixth Amendment guarantees a defendant the right to cross-examination, it also permits the trial court to place reasonable limits on that cross-examination to prevent confusion of the issues. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (emphasis in original). The OCCA concluded that Petitioner's cross-examination of R.H. was not foreclosed by the trial court. Rather, it determined that the trial court intervened only when necessary to avoid confusion of the witness, the issues, and the jury.

In seeking habeas relief on the cross-examination issues, Petitioner cites to the

13

decision in *Ohio v. Roberts*, 448 U.S. 56 (1980), and its quotation from *Mattox v. United States*, 156 U.S. 237, 242-43 (1895), with regard to the purpose behind the constitutional right to confront witnesses through cross-examination. Supporting Brief, p. 14. Petitioner appears to cite this decision for general principles and does not suggest how either of the OCCA's rulings with respect to cross-examination were in conflict with this decision. The same holds true with respect to Petitioner's citation to the decisions in *Pointer v. Texas*, 380 U.S. 400, 401 (1965) and *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Supporting Brief, p. 13. Both decisions reflect the clearly established right of a defendant to confront the witnesses against him, but neither stands for the proposition Petitioner is seeking to establish: that such a right is absolute under the facts of his particular case. Petitioner also cites to the decision in *California v. Green*, 399 U.S. 149, 162 (1970), for the proposition that "[w]hen the declarant appears for cross-examination at trial, the Confrontation clause places no constraints at all on the use of prior testimonial statements." Supporting Brief, p. 14. *Crawford v. Washington*, 541 U.S. 36, 59 (2004), is also relied on in support of this proposition. These decisions, however, do not establish that a defendant has the unfettered right to use preliminary hearing testimony to cross-examine a witness in any manner he may choose. Rather, they speak to the admissibility of prior testimonial statements against a defendant where a defendant has not the had the opportunity for cross-examination.

Finally, Petitioner relies on *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), in arguing that he was "deprived of his fundamental right to Confrontation as well as his

*absolute* right to present his defense." Supporting Brief, p. 15 (emphasis added). In *Holmes*,

the Court recognized that "rules that exclude[] important defense evidence but d[o] not serve

any legitimate interests" can infringe upon a criminal defendant's "meaningful opportunity"

to present a defense. *Holmes*, 547 U.S. at 324-25. Thus, the exclusion of evidence under

such arbitrary rules is prohibited by the Constitution. Nonetheless, "well-established rules

of evidence permit trial judges to exclude evidence if its probative value is outweighed by

certain other factors such as undue prejudice, confusion of the issues, or potential to mislead

the jury." *Id.* at 326.

The OCCA's determination did not conflict with these decisions, and Petitioner has

failed to establish that such a determination was an unreasonable application of Supreme

Court precedent. The OCCA did not countenance the application of an arbitrary rule in

upholding the trial court's refusal to allow the cross-examination of A.H. about alleged prior

false allegations but, instead, upheld the exclusion based on the lack of probative value.

And, while recognizing the clearly established Constitutional right of cross-examination, the

OCCA found that defense counsel's cross-examination of R.H. was not "shut down."

Counsel was permitted to use R.H.'s preliminary hearing testimony to cross-examine her.

The trial court intervened from time to time, not to foreclose the cross-examination, but to

avoid confusing the young witness and the jury. Habeas relief is not warranted on this

ground.

### Ground Two - Sufficiency of the Evidence to Prove Guilt Beyond a Reasonable

**Doubt**

Petitioner claims that the evidence was insufficient to support his rape convictions. In considering the sufficiency of the evidence supporting a conviction for purposes of habeas corpus relief, clearly established Supreme Court precedent provides that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On direct review of Petitioner's conviction, the OCCA concluded:

> When viewed in the light most favorable to the State, a rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt on the evidence presented. *Coddington v. State*, 2006 OK CR 34, ¶ 66, 142 P.3d 437, 455 (citing *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-04; *Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559). Although the testimony of the two victims was uncorroborated and contained some inconsistencies, it was not inherently unbelievable as Hernandez contends. The girls' descriptions of the specific criminal acts committed against them was clear, lucid, consistent, and contained explicit details that only a child who had experienced sexual abuse would know. *See Roldan v. State*, 1988 OK CR 219, ¶ 7, 762 P.2d 285, 286-87 (holding that conviction may be sustained on uncorroborated testimony of complaining witness, unless testimony appears incredible and so unsubstantial as to make it unworthy of belief); *Jones v. State*, 1988 OK CR 281, ¶ 10, 765 P.2d 800, 802 (holding that rape conviction will be affirmed on uncorroborated testimony of victim unless the testimony appears incredible or so unsubstantial as to make it unworthy of belief); *Ray v. State*, 1988 OK CR 199, ¶ 8, 762 P.2d 274, 277 (holding that testimony by rape or sexual abuse victim that is lucid, clear, and unambiguous, is not incredible or unworthy of belief).

Response, Ex. 3, p.4.

Thus, the OCCA properly identified and applied the *Jackson* standard in determining

Petitioner's sufficiency of the evidence claim on direct review; its decision, therefore, was not contrary to clearly established federal law. *See Bell v. Cone,* 535 U.S. 685, 694 (2002). The question then becomes "whether the OCCA's application of *Jackson* was unreasonable." *Matthews v. Workman,* 577 F.3d 1175, 1183 (10th Cir. 2009) (footnote omitted).

In Oklahoma, the elements of first degree rape by instrumentation of a victim under fourteen are penetration of the vagina of a child under fourteen by a part of the human body other than the penis. Okla. Stat. tit. 21, § 1111.1; OUJI-CR-4-126. The elements of second degree rape of a victim under sixteen are sexual intercourse with a person who is not the spouse of the defendant where the victim was under the age of sixteen. Okla. Stat. Tit. 21, § 1114 (B); OUJI-CR-4-124. Finally, the elements of first degree rape of a victim under fourteen are sexual intercourse with a person who was not the spouse of the defendant where the defendant was over the age of eighteen, and the victim was under the age of fourteen. Okla. Stat. tit. 21, § 1114 (A)(1); OUJI-CR-4-120. In seeking habeas review, Petitioner does not contend that proof of these essential elements was not presented to the jury through the testimony of his step-daughters. Rather, he argues that "there is insufficient evidence to support the convictions as the alleged victims' testimony was uncorroborated, conflicting, contradictory and inherently unbelievable as a matter of law." Supporting Brief, p. 15.

In this regard, Petitioner relies upon the same arguments that were considered and rejected by the OCCA. Supporting Brief, pp. 15-17; Response, Exhibit 1, pp. 18-27. The OCCA acknowledged that the girls' testimony was uncorroborated and contained

inconsistencies. Consequently, citing to its decision in *Roldan v. State,* 762 P.2d 285, 286-87 (Okla. Cr. 1988), the court considered whether such testimony appeared incredible and so unsubstantial that it was unworthy of belief, thus requiring corroboration. Based upon its review of the proceedings, the court did not find the testimony to be unbelievable, concluding that the testimony was clear and included the type of detail about which only a child who had undergone sexual abuse would be aware. Therefore, the court concluded that no corroboration was required.

In seeking habeas relief, Petitioner does not address the OCCA's finding regarding the explicit and detailed nature of the girls' testimony. A review of that testimony shows that the older step-daughter, A.H., testified that after her mom would leave the house, Petitioner would let her know with a look to go into his bedroom and would then shut and lock the door. Tr. T. 50 -52. He would tell her to lie down on the bed; she would lie on her back with her feet hanging off but not touching the floor. *Id.* at 52. Petitioner would then unbuckle her pants and pull down her pants and underwear to her knees and then do the same with his. *Id.* at 52-54. Sometimes her pants and underwear would stay at her knees but sometimes Petitioner would pull one leg out completely; her legs spread further apart when this happened. *Id.* at 54. He would then get on top of her, place one hand beside her "and then he would pull out his private and then he would stick it in mine and then put his other hand by my other side. And then when he puts it in, he would just put it in and out." *Id.* at 53. Petitioner's "body would be on top of mine, like stomach to stomach" and "he would move

18

his body like up and down." *Id.* at 53-54.  She further testified that this took about five minutes and "[a]fter he got done he would be breathing hard and then he would pull his pants and his underwear up." *Id.* at 55.

The younger step-daughter, R.H., told the jury that when her mother was gone Petitioner would call her into his bedroom and tell her to go to his bed where she would sit while Petitioner pulled her pants and underwear down to her knees. *Id.* at 205-207, 240.  Her legs were spread apart, with her legs hanging down but not touching the floor. *Id.* at 239. She testified that he would then put his finger in and out in "[t]he middle of my legs." *Id.* at 208, 210.  She further testified that Petitioner would stand while doing this, *id.* at 218, and that sometimes he would then go into the bathroom and wash his hands. *Id.* at 220.

Further, Petitioner does not suggest how the OCCA's conclusion that a rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt was an unreasonable application of federal law. Rather, he continues to argue that the girls' version of events was not credible.  In considering a sufficiency of the evidence claim, the court may not weigh conflicting evidence or consider the credibility of witnesses but must, instead, "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F. 2d 1483, 1487 (10th Cir. 1993).

The OCCA's application of the *Jackson* standard was not unreasonable, and Petitioner is not entitled to habeas relief on this ground.

### Ground Three - Exclusion of Evidence that the Victims Had Been Instructed to

**Lie**

As his third basis for habeas relief, Petitioner argues the trial court erred in excluding testimony by Julie Bryan regarding a statement that Tanya Hernandez, the girls' mother, purportedly made to her. Supporting Brief, pp. 18-20. Specifically, Petitioner maintains he should have been permitted to present testimony from Julie Bryan that Tanya Hernandez told her in a telephone conversation that she had instructed A.H. and R.H. to lie about Petitioner's sexual abuse of them. Petitioner contends this evidence established the girls' motive to testify against him and was admissible as a statement against penal interest under Oklahoma's hearsay rules. He argues, "In a case where the credibility of Tanya Hernandez's daughters, particularly their motive to lie, was key, exclusion of this evidence deprived petitioner of a fair trial and his right to present his defense." *Id.* at 18.

The record reflects that this issue was raised before the trial court prior to trial, Tr. T. 6-10, and in a subsequent offer of proof. Tr. T. 408-412. The trial court did not allow the testimony, finding it was hearsay and was not subject to an exception to the hearsay rule. *Id.* at 411. The court also found that even were the evidence relevant, it would be more prejudicial than probative and would be misleading to the jury. *Id.* at 411-412.[3] On direct appeal, Petitioner asserted that his fundamental right to present evidence in his own defense had been violated by this ruling. Response, Exhibit 1, pp. 27-31. The OCCA reviewed

---

[3] The trial court also made a finding on the record that the evidence was uncorroborated hearsay. Tr. T. 34-35.

Petitioner's claim on direct appeal and concluded as follows:

> The trial court judge did not abuse his discretion by excluding testimony from a witness that A.H.'s and R.H.'s mother told her that she instructed the girls to lie about the sexual abuse, despite the fact that such a statement by the mother could have subjected her to criminal prosecution. *See* 12 O.S.Supp.2002, § 2804 (B)(3)(allowing hearsay statement into evidence if it tends to subject declarant to civil or criminal liability). In this instance, while the statement could have subjected the girls' mother to criminal liability, there was no corroborating evidence that the mother made the statement. For a hearsay statement to be admissible as against a declarant's interest in this manner, it must be corroborated as reliable by other evidence. 12 O.S.Supp.2002, § 2804(B)(3); *Pavatt v. State*, 2007 OK CR 19, ¶ 46, 159 P.3d 272, 287. *See also Costa v. State*, 1988 OK CR 74, ¶¶ 4-5, 753 P.2d 393, 394-395 (finding that trial court properly excluded statement of unavailable declarant allegedly admitting homicide as inadmissible under section 2804 (B)(3), where, among other things, parts of statement were inconsistent with other testimony and only witnesses to alleged statement were defendant himself and defendant's girlfriend).

Response, Exhibit 3, pp. 5-6.

"Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers,* 410 U.S. at 302. "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.* With respect to Petitioner's contention that he was deprived of his fundamental right to present a defense by application of the hearsay rule, the OCCA relied on its decision in *Pavatt v. State,* 159 P.3d 272, 287 (Okla.Crim.App. 2007), in rejecting the claim. In determining that the defendant had not been denied his right to present a defense, the *Pavatt* court found that while certain letters contained statements which were against the penal interest of their author, the defendant was still required to

21

corroborate the statement as trustworthy under the section Oklahoma Evidence Code which sets out various exceptions to the rule prohibiting hearsay. Section 2804(B)(3). *Id.* The court went on to note that "[o]ut-of-court statements, tending to exonerate the defendant and implicate the declarant, have traditionally been viewed with great suspicion." *Id.* (citing *Donnelly v. United States,* 228 U.S. 243 (1913) (footnote omitted)). The court further determined that the evidentiary rule at issue was not in the nature of those evidentiary rules which the Supreme Court had found unconstitutional as serving no legitimate purpose, as disproportionate to their purpose, or as too rigid. *Id.* at 288-289 (citing *Chambers v. Mississippi,* 410 U.S. 284 (1973)).

Thus, in rejecting Petitioner's contention that he was deprived of his fundamental right to present a defense by application of the hearsay rule, the OCCA, while not citing Supreme Court precedent, rejected Petitioner's evidentiary claim in reliance upon state court precedent which squarely addressed the constitutional issue and, consequently, its "decision constitutes an adjudication of the federal claim[.]" *Harris v. Poppell,* 411 F.3d 1189, 1196 (10th Cir. 2005). *See also Harrington,* 131 S.Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Petitioner's request for habeas relief in connection with the OCCA's conclusion that he had not been denied the fundamental right to present a defense, cites exclusively to the

22

*Chambers* decision as governing Supreme Court authority.  Supporting Brief, pp. 18-20. Accordingly, the question is whether the OCCA's determination that Petitioner's rights were not violated is contrary to, or an unreasonable application of clearly established Supreme Court precedent in *Chambers*.  The law which is clearly established in *Chambers* is that a defendant cannot be denied a meaningful opportunity to present a defense.  It is also clearly established by *Chambers* that a rule of evidence which arbitrarily excludes valid defense evidence can violate due process.  There is, however, nothing that is arbitrary about a rule prohibiting the introduction of hearsay evidence at trial.  As the *Chambers* Court expressly recognized, "[T]he hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact."  *Chambers,* 410 U.S. at 298.  The OCCA's determination that the trial court properly excluded testimony by Julie Bryan regarding a statement that Tanya Hernandez, the girls' mother, purportedly made to her is neither contrary to, nor an unreasonable application of *Chambers*.  Petitioner is not entitled to habeas relief on this issue.

### Ground Four - Improper Vouching

Here, Petitioner complains that the State improperly used two witnesses to bolster its case against him.  The trial transcript shows that the first of these witnesses, Kathleen Hatlelid, was a physician assistant at Children's Hospital in Oklahoma City who, as a member of the child protection team, performed sexual abuse exams. Tr. T. 336-340. Ms.

23

Hatledid did not perform an examination of either victim, *id.* at 340, and her only testimony with regard to them was in testifying that she believed counsel correctly stated that there were no physical findings as to the girls. *Id.* at 352. She testified based upon her experience that if an examination took place a month after the alleged sexual abuse, "[n]inety-five percent of the time we wouldn't find anything." *Id.* at 343. She explained that because children heal quickly, if they are not seen within the first two weeks of the alleged abuse, and if "there are no findings, either there were never findings or there were findings and they have healed." *Id.* at 343-344. She agreed that "a normal finding in a child sex abuse examination is no indication one way or the other of whether or not child sex abuse occurred." *Id.* at 349.

The second witness was forensic interviewer Maria Rosales-Lambert. *Id.* at 355. Based upon her experience in interviewing child sexual abuse victims, she testified generally about how children disclose information, *id.* at 361-368, about the grooming of a child by a sexual perpetrator, *id.* at 369-371, about detecting whether a child has been coached, *id.* at 371-374, and about the interview process. *Id.* at 375-376. She then described the process she went through in her interview with the younger step-daughter, R.H. *Id.* at 376-391.

It is Petitioner's claim both here and before the OCCA that Ms. Hatlelid's testimony was not that of an expert who had examined the girls but "was solely offered to bolster [their] credibility . . . and to tell the jury what result to reach by cloaking broad, inappropriate statements such as 'a normal exam is consistent with a history of sexual abuse' and that

normal exams 'never tell me that nothing happened' under the veil of scientific expertise."

Supporting Brief, pp. 20-21. As to Ms. Rosales-Lambert, Petitioner points to her testimony

that children over the age of ten are less susceptible to coaching. Supporting Brief, p. 23.

In denying this claim on direct appeal, the OCCA explained as follows:

> Physician Assistant Kathleen Hatlelid's testimony about what a "normal result" means in the context of a sexual abuse examination was not impermissible vouching that usurped the jury's fact-finding function. Ms. Hatlelid neither gave explicit personal assurances of A.H.'s or R.H.'s truthfulness, nor did she implicitly suggest that information not presented at trial supported their testimony. *Simpson v. State*, 2010 OK CR 6, ¶ 36, 230 P.3d 888, 901 (*quoting Warner v. State*, 2006 OK CR40, ¶ 24, 144 P.3d 838, 860)([e]vidence is impermissible vouching only if the jury could reasonably believe that a witness is indicating a personal belief in another witness's credibility, `either through explicit personal assurances of the witness's veracity or by implicitly indicating that information not presented to the jury supports the witness's testimony'"). Nor did forensic interviewer Maria Rosales-Lambert improperly vouch for the credibility of either girl. The context of Rosales- Lambert's testimony shows that when she said that children over the age of ten are much less susceptible to coaching and that a ten year-old child is no more suggestible than an adult, she was not specifically referring to either A.H. or R.H. Rather, she was explaining to the jury why children suspected of being abused are interviewed differently than adults and why the questions asked during such interviews must be carefully crafted. Nowhere did Rosales-Lambert testify to a personal belief in A.H.'s or R.H.'s credibility, nor did she give explicit personal assurances of either girl's veracity, nor did she implicitly suggest that information not presented to the jury supported their testimony. Rosales-Lambert did not improperly vouch for the credibility of either girl. *Simpson*, 2010 OK CR 6, ¶ 36, 230 P.3d at 901.

Response, Exhibit 3, pp. 6-7.

"State court rulings on the admissibility of evidence may not be questioned in federal

habeas proceedings unless they render the trial so fundamentally unfair as to constitute a

denial of federal constitutional rights." *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979).

"'[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements,' when engaged in such an endeavor a federal court must 'tread gingerly' and exercise 'considerable self-restraint.'" *Duckett v. Mullin,* 306 F.3d 982, 999 (10th Cir. 2002) (citation omitted). Based upon a review of the testimony of Ms. Hatlelid and Ms. Rosales-Lambert in light of these standards, the undersigned concludes that Petitioner's trial was not rendered fundamentally unfair by admission of their testimony. Neither witness indicated their belief that the girls were credible witnesses or told the jury what result they should reach. The testimony "was not so egregious that it 'fatally infected' or 'necessarily prevent[ed] a fair trial." *Parker v. Scott,* 394 F.3d 1302, 1311 (10th Cir. 2005). Petitioner is not entitled to habeas relief on this ground.

### Ground Five - Admission of Evidence of Other Crimes, Wrongs, or Bad Acts

Petitioner contends he was deprived of a fair trial by the trial court's admission of other crimes, wrongs, and bad acts. Supporting Brief, pp. 24-16. Petitioner's contentions in support of habeas relief are essentially the same as those presented to the OCCA on direct appeal and are detailed in that court's rejection of the claims:

> Testimony by A.H. and R.H. that Hernandez beat or spanked them, hurt their mother, and gave both girls tattoos, was not improper evidence of other crimes, wrongs, or bad acts.

> A.H. testified that Hernandez hit her in connection with the alleged sexual activities. The testimony was therefore directly related to the charged offenses and by definition was not evidence of other crimes, wrongs, or bad acts subject to exclusion under 12 O.S.2001, § 2404(B). Moreover, while Hernandez's objection to A.H.'s testimony that she saw Hernandez "hurt" her mother was sustained by the trial court, it was relevant to explaining why she

did not tell anyone about the sexual abuse because it was some evidence of Hernandez's use of physical violence within the household, a tactic that provided him the opportunity to continue abusing A.H. by intimidating her into silence. The testimony was therefore properly admissible under the "opportunity" exception in Section 2404(B) and as *res gestae*. *See Warner v. State*, 2006 OK CR 40, ¶ 68, 144 P.3d 838, 868 (holding that evidence is *res gestae* and not other crimes or bad acts evidence when it is: (1) so closely connected to charged offense as to form part of entire transaction; (2) necessary to give jury complete understanding of crime; (3) central to chain of events).

With regard to R.H.'s testimony that Hernandez occasionally spanked her with his hand or a belt, we fail to see how a child's testimony about occasional spankings with a hand or belt is evidence of other crimes, wrongs, or bad acts. Use of reasonable physical force as a means of disciplining children is lawful in this State and is a normal parenting activity. See e.g., 21 O.S.2001, § 844("[N]othing contained in this Act shall prohibit any parent, teacher or other person from using ordinary force as a means of discipline, including but not limited to spanking, switching or paddling"). R.H. also testified that she saw Hernandez "choke" their mother. R.H. stated that the violence toward her mother was what made her afraid to tell anyone about the sexual abuse because she feared that Hernandez would hurt her mother if she disclosed the sexual abuse. R.H.'s testimony about seeing Hernandez choke her mother, like A.H.'s testimony about seeing Hernandez "hurt" her mother, is evidence of Hernandez's use of physical intimidation within the household, a tactic that afforded him the opportunity to continue abusing R.H. by ensuring her silence. Therefore, just as with A.H., R.H.'s testimony about seeing her mother being choked by Hernandez was not evidence subject to exclusion under Section 2404 (B). Admission of R.H.'s testimony was not plain error.

Additionally, R.H.'s and A.H.'s testimony about their tattoos and admission of photographs of those tattoos was not improper evidence of other crimes, wrongs or bad acts. While it is unlawful to tattoo a person under eighteen years of age, 21 O.S.Supp.2009, § 842.1 (A) (2009), and therefore, A.H.'s and R.H.'s testimony about the tattoos was evidence of other crimes, the evidence that Hernandez tattooed the girls was relevant in that it showed the degree of control he exercised over the girls. For example, Hernandez chose the tattoos for each girl, and at least with regard to A.H., tattooed her over her mother's objection. Furthermore, A.H.'s tattoo, "Daddy's Girl," was especially relevant because it was not only evidence of Hernandez's control over A.H.,

but also was evidence of his view of their relationship. In this light, the tattoo evidence was necessary to give jury complete understanding of crime. Consequently, it was *res gestae* and not subject to exclusion by 12 O.S.2001, § 2404 (B) (2001). Admission of this evidence was not plain error.

Response, Exhibit 3, pp. 7-9 (footnotes omitted).

To the extent the OCCA determined that admission of the challenged evidence was not plain error, "Oklahoma's plain-error test is rooted in due process." *Thornburg v. Mullin,* 422 F.3d 1113, 1124 (10th Cir. 2005). In this regard, there is "no practical distinction between [Oklahoma's application] of plain error . . . and the federal due-process test, which requires reversal when error 'so infused the trial with unfairness as to deny due process of law[.]'" *Id.* at 1125 (quoting *Estelle v. McGuire,* 502 U.S. 62, 75 (1991). "Because the OCCA applied the same test we apply to determine whether there has been a due-process violation, we must defer to its ruling unless it 'unreasonably appli[ed]' that test." *Id.* (quoting 28 U.S.C. § 2254(d). On habeas review, then, this court must determine whether the OCCA reasonably applied Supreme Court precedent when it declined to find plain error. Petitioner has cited no Supreme Court authority in support of his claim and has failed to establish that the OCCA unreasonably applied Supreme Court decisions when it determined, through a plain error analysis, that there had been no due process violation.

To the extent the OCCA rejected Petitioner's claims on state law grounds, a court "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." *Knighton v. Mullin,*

293 F.3d 1165, 1171 (10th Cir. 2002) (citation omitted).  Under this standard, the prejudice

from the admission of the disputed evidence did not significantly outweigh the probative

value of the evidence, and Petitioner's trial was not rendered fundamentally unfair by its

admission.  The disputed evidence was relevant, a factor bearing on a determination of the

fundamental unfairness of a trial.  *Id.*  The evidence from both victims that Petitioner hurt

their mother showed Petitioner's use of physical domination in the household and was

relevant to explaining why the girls were intimidated into silence.  Likewise, evidence that

Petitioner tattooed the girls was probative of his degree of control over the girls.  And, as the

OCCA found, A.H.'s tattoo – Daddy's Girl – was particularly relevant evidence of his view

of their relationship.

Petitioner has not established entitlement to habeas relief on this claim.

## Ground Six - Prosecutorial Misconduct

Petitioner asserts in his sixth ground for habeas relief that he was deprived of a fair

trial because the prosecutor's closing argument "vilified" defense counsel "by arguing

[counsel] was 'beating up' two young girls;" made "a plea for sympathy and societal alarm

by lumping together crimes committed against children not attributable to petitioner;" by

injecting improper victim impact evidence into the trial; and, by arguing to the jury "that a

verdict of not guilty would make what was alleged to have happened to [A.H. and R.H.] 'a

whole lot worse.'" Supporting Brief, pp. 26-28.[4]

---

[4]Petitioner states he has raised other instances of prosecutorial misconduct and
(continued...)

On direct appeal, Petitioner maintained that each of these instances deprived him of a fair trial. The OCCA rejected the claims in the following manner:

> Contrary to Hernandez's assertion, the prosecutor did not improperly elicit sympathy for the victims by vilifying or chastising defense counsel for pointing out inconsistencies in A.H.'s and R.H.'s testimony. When viewed in their full context, the prosecutor's comments about defense counsel's cross-examination of A.H. and R.H. and the testimony it elicited was an attempt to focus the jury's attention on the girls' demeanor as they testified under hostile questioning. This was fair argument. *See Hanson v. State*, 2003 OK CR 12, ¶ 13, 72 P.3d 40, 49 (holding that prosecutors have wide latitude in closing argument to discuss evidence and reasonable inferences from it); *Frederick v. State*, 2001 OK CR 34, ¶ 150, 37 P.3d 908, 946 ("[t]he right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide").
>
> Nor did the prosecutor raise the improper societal alarm argument by arguing that Hernandez was "guilty of every single rape we have charged him with and with hundreds more that he is not charged with" (Appellant's Brief at 42, quoting Tr. Vol. 4 at 633). It is clear that in the context of this trial, the prosecutor was not referring to crimes committed by others, nor was she arguing that the jury should make an example out of Hernandez. *See e.g., McElmurry v. State*, 2002 OK CR 40, ¶ 151, 60 P.3d 4, 34 ("[t]he prohibited `societal alarm' argument is one that mentions crimes committed by other persons and not attributable to the defendant on trial such as arguments that the crime rate is increasing . . . or that the jury should `make an example' out of the defendant on trial to deter other potential criminals"). Rather, the prosecutor was arguing that the evidence against this specific defendant was so strong that it showed that he was not only guilty of the charged instances of rape and sexual abuse, but with more (e.g., both A.H. and R.H. testified that Hernandez abused them more times than he was charged with).

---

[4](...continued)
improper argument elsewhere in his points of error and that he incorporates them into this proposition. Supporting Brief, p. 26. Petitioner's argument of prosecutorial misconduct with respect to the matters raised in these points of error is grounded on the presumption that the evidence at issue was "irrelevant" and "unduly prejudicial" and that it is improper for a prosecutor to emphasize such evidence. *Id.* Petitioner's argument fails in this case as no error warranting habeas relief has been found as to those points of error.

Additionally, the prosecutor did not inject improper victim impact evidence into the trial by telling the jury "[i]f you find this defendant not guilty, [A.H.] will be right and her greatest fear will come true, that she was not believed when she finally had the courage and the strength and had had enough to tell somebody" (Appellant's Brief at 44, quoting Tr. Vol. 4, 635). *Cf. Carol v. State*, 1988 OK CR 114, ¶ 10, 756 P.2d 614, 617 (prosecutor's comments that victim would never forget pain of having to testify against step-father in rape case were acceptable for closing argument); *Croon v. State*, 1984 OK CR 69, ¶ 10, 682 P.2d 236, 238 (prosecutor's comments in closing argument that victim would have to live with events of night of crime for rest of life were acceptable for closing argument).

Response, Exhibit 3, pp. 9-11.

In the Tenth Circuit, the test for determining whether or not prosecutorial comments violate due process is that set forth by the Supreme Court in *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). *See Brecheen v. Reynolds*, 41 F.3d 1343, 1355 (10th Cir. 1994). In *Donnelly*, the Supreme Court held that prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. *Donnelly*, 416 U.S. at 642-48. Under this test, it is not enough for Petitioner to show that the remarks were undesirable or even universally condemned. *Id.* at 642-43. Rather, the relevant question is whether the remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To establish that a prosecutor's remarks were so inflammatory that they prejudiced the substantial rights of Petitioner, Petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, a conviction probably would not have occurred. *See Thomas v. Cowley*, No.

90-6105, 1991 WL 151773 at * 9 (10th Cir. Aug. 8, 1991).

Petitioner has failed to make the required showing. As the OCCA found, the prosecutor's comment about the hostile nature of cross-examination, Tr. T. 609-610, was not an egregious attempt to garner sympathy for the victim-witnesses but was a fair comment on how the girls reacted on the witness stand. This comment did not render Petitioner's trial fundamentally unfair. The same is true with respect to the prosecutor's statement that not only is Petitioner guilty of the specific instances of rape he was charged with but "with hundreds more that he is not charged with. *Id.* at 633. The prosecutor's argument was supported by the testimony of both victim-witnesses that Petitioner abused them on occasions other than those reflected in the charges against him. Likewise, although the prosecutor's comment that if Petitioner were found not guilty, then A.H.'s greatest fear of not being believed if she told would come true, *id.* at 635, might have been inappropriate, there was no persistent or pronounced misconduct, and the evidence was not so insubstantial that without the remark, a conviction would probably not have resulted. It is recommended that relief be denied as to this sixth ground for relief.

### Ground Seven - Excessive Sentence

Petitioner argues that "[i]n the instant case this court cannot conscientiously say that life, three 20 year sentences, a 15 year sentence, and two 2 year sentences are not shocking to the conscience, given the facts and circumstances in this case." Supporting Brief, p. 28. On direct review, the OCCA found that "each component of Petitioner's sentence [was]

32

within the statutory limits." Response, Exhibit 3, p. 11. On federal habeas review, Petitioner makes no claim that his sentence was outside the range of punishment set by the Oklahoma legislature for his crimes. Accordingly, his sentence does not violate the Eighth Amendment's proscription against cruel and unusual punishment, and habeas relief is not warranted on this claim. *See United States v. Delacruz-Soto,* 414 F.3d 1158, 1168 (10th Cir. 2005).

### Ground Eight - Cumulative Error

As his final ground for relief, Petitioner maintains that the accumulation of the various errors that occurred at his trial entitles him to habeas relief. Supporting Brief, pp. 29-30. Nonetheless, "[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). The OCCA examined this same claim by Petitioner and concluded that "[b]ecause we have found no merit to any of [Petitioner's] claims of error, there is no error to accumulate." Response, Exhibit No. 3, p. 11. Petitioner has not established entitlement to habeas relief on this ground.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied. The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by the 11th day of December, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.

The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

DATED this ___21___ day of November, 2012.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE